(6 App. Div. 86.)

PEOPLE ex rel. TRUSTEES OF DIOCESE OF LONG ISLAND v. DOH-
LING et al., Assessors of Town of Newtown.

(Supreme Court, Appellate Division, Second Department.　June 2, 1896.)

1. TAXATION—EXEMPTION—LAND OF RELIGIOUS CORPORATION.
　　Land acquired by a religious corporation created by Laws 1871, c. 750,
§ 2, which authorizes it to acquire by gift a certain quantity of land, and
to hold the same for the uses and purposes of the corporation, and declares
that such land "shall be used solely and exclusively for such religious, char-
itable, and benevolent purposes as the corporation with the written consent
of the ecclesiastical authority of the diocese may from time to time deter-
mine, and the same shall be exempt from taxes," is exempt though it is not
used for the purposes mentioned in the act, but is leased, and the rents
applied to the purposes of the corporation.

2. CONSTITUTIONAL LAW—IMPAIRING OBLIGATION OF CONTRACT.
　　Such act constituted a contract on the part of the state, within the clause
of the federal constitution forbidding any state to pass a law impairing the
obligation of contracts, and therefore land given to the corporation cannot
afterwards be subjected to taxation.　Per Pratt, J.

3. STATUTES—REPEAL—GENERAL AND SPECIAL ACT.
　　Laws 1893, c. 498, § 1, which provides that real property of a religious cor-
poration, which is used exclusively for the purposes of such corporation,
shall be exempt from taxation, but that the real property of such corpora-
tion not held by it exclusively for such purposes, but leased, shall not be
so exempt, is a general statute, and does not repeal Laws 1871, c. 750,
which creates a religious corporation, and authorizes it to hold a certain
quantity of land exempt from taxation.

Appeal from special term, Queens county.

Certiorari by the trustees of the estate belonging to the diocese
of Long Island to review an assessment of relator's property for
taxation by Louis Dohling and others, assessors of the town of
Newtown.　From an order declaring the assessment illegal, and
striking the same from the roll, defendants appeal.　Affirmed.

Argued before BROWN, P. J., and PRATT, BARTLETT, and
HATCH, JJ.

George L. Glaser, for appellants.
William T. Gilbert, for respondent.

PRATT, J.　This is an appeal from a final order declaring a cer-
tain assessment for taxes, imposed by the appellants upon the real
estate of respondent, to be illegal, and directing that the same
be stricken from the roll.　The facts are as follows:

The relator is a corporation, created by chapter 750 of the Laws
of 1871.　By the first section the bishop and the standing commit-
tee for the time being are created and declared to be a body politic
and corporate for the purposes contemplated by the act.　Perpet-
ual succession and the power to make by-laws for the management
and control of the property and affairs of the corporation are
granted.　Section 2 authorizes the corporation to acquire by gift,
etc., a tract of land, not exceeding 100 acres, in Queens or Suffolk
county, not within any city or village, and to hold the same in per-
petuity for the uses and purposes of the Protestant Episcopal
Church in the diocese of Long Island, and declares that said land
"shall be used solely and exclusively for such religious, charitable

and benevolent purposes as the corporation, with the written consent of the ecclesiastical authority of the diocese may from time to time determine, and the same shall be exempt from taxes and assessments," and prohibits roads, railroads, etc., over the same without the consent of said ecclesiastical authority.    Pursuant to this legislative offer and authority James Maurice, late of Maspeth, deceased, in 1878 gave to the corporation 86 acres of land in Newtown.    The assessors of that town have assessed the land for the annual taxes of the current year.    The corporation duly applied to them to strike the tax from the roll, but they refused.    The return of the assessors states that they made the assessment on the ground that the land was not being used for the purposes mentioned in said act, and that there was no probability of its ever being so used. • One of the trustees of the relator was examined on oath before said assessors, and testified that there has never been erected on the premises any church, hospital, or benevolent or charitable institution; but the property has been rented, and all the income and revenue received therefrom have been devoted to the purposes of the Episcopal diocese of Long Island, and that such use had been approved by the ecclesiastical authority of Long Island in accordance with law.

The rule is that statutes should be read according to the most natural and obvious import of the language employed.    The intention of the legislature must be gathered from the words used, and it must be such an intention as the legislature have used words to express, and what they really meant by their enactment.    People v. Wemple, 115 N. Y. 302, 22 N. E. 272, and cases cited.    The statute (chapter 750, Laws 1871) seems too plain and precise to require any interpretation different from the import of the words used.

The only restriction as to the use of the land was such uses and purposes as should be approved or determined by the ecclesiastical authority of Long Island; but it must be noted that that provision is independent, and disconnected from the exemption.    There is no provision in said statute that, in case said restriction is violated, the exemption shall be forfeited.    The exemption took effect at once, and the relator was expressly authorized to hold the land for the purposes as well as the uses of the church, and has done so by devoting all the income to the prescribed purposes, and it could be subjected to no other immediate use.    But the legislature made an immediate grant of power to take, hold, and control the property exempt from taxation.    There is nothing in the act from which an intent on the part of the legislature can be inferred that the church should cover the property with churches and hospitals.    It is plain, therefore, that the only restriction on the power of the relator is the requirement of the consent of the ecclesiastical authority to the purposes determined by the relator, and it appears that such consent was given.    People v. Barber, 42 Hun, 27.

It is to be noticed that the use is not made the test of exemption, but it is exempted at once, before it can be put to any use, and

without regard to use. The statute does not say the property shall be exempt only so long or provided it is used for a church or hospital building, but the exemption is immediate and absolute. People v. Pratt, 129 N. Y. 68, 74, 29 N. E. 7; Willard v. Pike, 59 Vt. 202, 9 Atl. 907; Osborne v. Railroad Co., 40 Conn. 491; Trustees of Wesleyan Academy v. Inhabitants of Wilbraham, 99 Mass. 599. These cases clearly show the distinction between making the use the test of exemption and exemption without regard to use.

Chapter 498 of Laws of 1893,[1] upon which the appellants rely, has no application to this case. That is a general statute, and the act of 1871 is a special statute; and the latter is not repealed or affected thereby unless it is plain such was the intention of the legislature. State v. Stoll, 17 Wall. 425, 436; Buffalo City Cemetery v. City of Buffalo, 46 N. Y. 506; Kerr v. Dougherty, 79 N. Y. 327; McKenna v. Edmondston, 91 N. Y. 231; People v. Board of Sup'rs of Westchester Co., 40 Hun, 353. I find no words in the act of 1893 indicating such an intention. But, assuming that the act of 1893 applies, and in terms repeals the act of 1871, we think the act incorporating the relator created a contract on the part of the state which is protected by the United States constitution prohibiting the passage of any law impairing the obligation of any contract.

[1] Laws 1893, c. 498, is as follows:

"Section 1. The real property of a corporation or association organized exclusively for the moral and mental improvement of men and women, or for religious, charitable, missionary, hospital, educational, patriotic, historical or cemetery purposes, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes, shall be exempt from taxation. But no such corporation or association shall be entitled to any such exemption if any officer, member or employé thereof shall receive or may be lawfully entitled to receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes, or as proper beneficiaries of its strictly charitable purposes; or if the organization thereof for any of such avowed purposes be a guise or pretense for directly or indirectly making any other pecuniary profit for such corporation or association, or for any of its members or employés, or if it be not in good faith organized or conducted exclusively for one or more of such purposes. The real property of any such corporation or association entitled to such exemption held by it exclusively for one or more of such purposes and from which no rents, profits, or incomes are derived, shall be so exempt, though not in actual use therefor, by reason of the absence of suitable buildings or improvements thereon, if the construction of such buildings or improvements is in progress, or is in good faith contemplated by such corporation or association. The real property of any such corporation not so used exclusively for carrying out thereupon one or more of such purposes, but leased or otherwise used for other purposes, shall not be so exempt; but if a portion only of any lot or building of any such corporation or association is used exclusively for carrying out thereupon one or more of such purposes of any such corporation or association, then such lot or building shall be so exempt only to the extent of the value of the portion so used, and the remaining portion of such lot or building to the extent of the value of such remaining portion shall be subject to taxation. Property held by an officer of a religious denomination shall be entitled to the same exemptions, subject to the same conditions and exceptions as property held by a religious corporation.

"Sec. 2. This act shall take effect immediately."

The state, by the act of 1871, invited the gift made by Maurice, and proposed that, in case the gift should be made, the land given should be exempt from taxes. On the faith of that proposal the gift was made. This was a sufficient consideration, and was beneficial to the state. It was for a public purpose. Dartmouth College Case, 4 Wheat. 625; People v. O'Brien, 111 N. Y. 1, 48–53, 18 N. E. 692, and cases cited; Binghampton Bridge Case, 3 Wall. 51–73. The power to repeal the charter could not undo the gift. People v. O'Brien, supra.

Order affirmed, with $10 costs and disbursements.

All concur, except that BROWN, P. J., and BARTLETT and HATCH, JJ., express no opinion upon the constitutional question discussed by PRATT, J.