(112 App. Div. 130)

### In re WHITE PLAINS PRESBYTERIAN CHURCH.

(Supreme Court, Appellate Division, Second Department. March 22, 1906.)

MUNICIPAL CORPORATIONS—LOCAL IMPROVEMENTS—ASSESSMENTS.

Under Laws 1879, p. 397, c. 310, providing that no land actually used for cemetery purposes shall be sold for any tax or assessment, nor shall any tax or assessment be levied, collected or imposed so long as it shall continue to be used for cemetery purposes, no assessment for an improvement can be levied, though the improvement is authorized by a special act. Laws 1900, p. 1178, c. 497.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 1048.]

Application by the White Plains Presbyterian Church for a writ of certiorari to the board of trustees of the village of White Plains to review an assessment for macadamizing and improving a street in the village of White Plains made by the trustees of the village. Assessment corrected.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, and HOOKER, JJ.

William A. Woodworth, for relator.
H. T. Dykman, for respondent.

JENKS, J. This is a writ of certiorari to review an assessment for macadamizing and improving a street, laid in part upon the realty of the applicant located thereupon. The said lands have a frontage of 350 feet, of which 50 feet are occupied by a church edifice, and the remainder by a burial ground. The applicant concedes that the said 50 feet are subject to an assessment (but not in the amount apportioned), but contends that the remainder is wholly exempt under chapter 310, p. 397, of the Laws of 1879. That act reads:

"Section 1. No land actually used and occupied for cemetery purposes shall be sold under execution or for any tax or assessment, nor shall such tax or assessment be levied, collected, or imposed, nor shall it be lawful to mortgage such land, or to apply it in payment of debts, so long as it shall continue to be used for such cemetery purposes.

"Sec. 2. Whenever any such land shall cease to be used for cemetery purposes, any judgment, tax, or assessment which, but for the provisions of this act, would have been levied, collected or imposed, shall thereupon forthwith, together with interest thereon, become and be a lien and charge upon such land, and collectible out of the same.

"Sec. 3. The provisions of this act shall not apply to any lands held by the city of Rochester."

I think that the lands of the relator are within the purview of the act. Our decision in Oakland Cemetery v. City of Yonkers, 63 App. Div. 448, 71 N. Y. Supp. 783, determines that said act is applicable notwithstanding the special act for this improvement. Section 1 of the act not only declares that such land shall not be sold under execution for any tax or assessment, but expressly prohibits the levy, collection or impost of any tax or assessment. It is contended that section 2 of the act necessarily implies that during the time that the lands are used for cemetery purposes there may be procedure in the levy or imposition of an assessment up to the collection thereof, and that, therefore, the assessment in this case may remain as laid but with the prohibition against collection, during such period. Personally, I am inclined to think that there is some force in that contention, for the reason that the scheme of the statute is not for exemption absolute, but exemption during the period that the land is used for such cemetery purposes. The expression of the said section that whenever the land shall cease to be used for cemetery purposes that any assessment, which would have been levied, collected or imposed "shall thereupon forthwith become and be a lien" is only fully satisfied by the condition that there is in existence some assessment perfected for collection, but suspended from collection by the act. This view is strengthened by the provision for "interest thereon." My associates, however, are of opinion that such construction cannot obtain for the reason that it is entirely antagonistic to the general declarative part of the act, the first section which in express terms prohibits the levy, collection, or impost, whereas it must be read as subordinate to it and in harmony with it. The court, then, is of opinion that the second section, so far as tax or assessment is concerned, refers to the period when the lands cease to be used for cemetery purposes. I admit that there is much that makes for this view; for it is said that othewise there is no exemption, but only deference of payment, and that practically there would be accumulated an enormous burden of taxes and assessments which might eat up the land. On the other hand, the absolute exemption and not deference of collection might well tempt speculators or property holders, by the devotion of lands to cemetery purposes for the time being, to obtain the benefits of taxation and assessment and avoid the burdens of them.

It is contended that there should be a discrimination made in the amount of the assessment for the reason that the lands of the applicant are used for a limited purpose, and that equality of assessment with other property of general use, is inequality in the eye of the law. The

special act (chapter 497, p. 1178, of the Laws of 1900) for this improvement provides that the board of trustees shall fix the district of assessment of the property in the judgment of said board benefited. The trustees adopted the foot frontage plan. I think that this was within the statutory powers conferred upon them. See City of Ithaca v. Babcock, 72 App. Div. 260, 265, 76 N. Y. Supp. 49. I think that in a work of this character, namely, the macadamizing and improving of a street, it cannot be urged that the benefit to the cemetery lands of the relator is so much less than to other lands upon the street, as to make the uniform application of the foot frontage rule erroneous. See the discussion in People ex rel. Scott v. Pitt, 169 N. Y. 521, 62 N. E. 662, 58 L. R. A. 372. We also discussed the question of inequality in our decision in Matter of Phelps (decided by this court December 29, 1905). 96 N. Y. Supp. 862.

It follows that the assessment should be corrected by exemption of all of the property of the applicant from the impost, and hence the collection of this assessment, save in the case of the 50 feet thereof occupied by the church edifice, without costs. All concur.