In the Matter of the Application of the CITY OF NEW YORK, Respondent and Appellant, Relative to Acquiring Title to That Part of Jerome Avenue Extending from Woodlawn Road to Mosholu Avenue in the Twenty-fourth Ward, Borough of the Bronx.

THE WOODLAWN CEMETERY ASSOCIATION, Appellant and Respondent.

1. TAX — EXEMPTION — CEMETERY LANDS — ASSESSMENT FOR LOCAL IMPROVEMENT — L. 1879, CH. 310. Under the provisions of L. 1879, ch. 310, § 1, lands actually used and occupied for cemetery purposes are exempt from assessment and taxation for local improvements, as well as for purposes of general taxation.

2. CONDEMNATION PROCEEDINGS — ASSESSMENT FOR BENEFIT. An assessment for benefit made by commissioners of estimate and assessment in condemnation proceedings to acquire land for the improvement of a city street, is an assessment for a local improvement notwithstanding that it is made in condemnation proceedings, as such proceedings may involve not only the exercise of the power of eminent domain, but of taxation as well.

3. SET-OFF OF BENEFIT AGAINST DAMAGE — CHARTER OF GREATER NEW YORK. Where cemetery lands are involved, no set-off of benefit against damages can be made under section 970 of the charter of Greater New York (L. 1901, ch. 466), as under the act exempting such lands from assessment and taxation (L. 1879, ch. 310, § 1), no assessment can properly be levied.

4. SAME. Nor is this changed because under section 1004 of the charter of Greater New York such an assessment is made a personal liability as well as lien upon the land, as a valid assessment is a necessary condition precedent to any liability.

5. ALTERATION OF COURSE OF STREET — ABANDONMENT OF PORTION. Where in condemnation proceedings instituted for the purpose of altering the course of Jerome avenue in the city of New York, a portion of the land included within the bounds of the avenue as originally laid out, of which the city had not acquired the fee, was abandoned and reverted to a cemetery, which was the adjoining owner, such abandoned portion of the avenue was, nevertheless, liable to assessment for benefit.

6. SAME — WHEN ABANDONED PORTION BECAME PART OF CEMETERY'S LANDS. Under the provisions of L. 1895, ch. 1006, § 2, such abandoned portion did not become part of the cemetery's lands so as to be exempt from assessment for benefit until the new avenue was "opened," which was intended to mean actually physically opened.

7. COMMISSIONERS OF ESTIMATE AND ASSESSMENT NOT TO PLACE IN THEIR REPORT ASSESSMENT FOR BENEFIT AGAINST EXEMPT CEMETERY LANDS — L. 1879, CH. 310, §§ 1 AND 2. Where cemetery lands are exempt from assessment under L. 1879, ch. 310, § 1, commissioners of estimate and assessment have no power to place assessments for benefit against such lands in their report of assessments. While section 2 of the same act seems to contemplate that after such lands shall cease to be used for cemetery purposes, they shall be liable to assessment which, but for the provisions of the act would have been levied, still it authorizes no valid assessment *in præsenti*.

*Matter of City of New York,* 120 App. Div. 201, modified.

(Argued May 21, 1908; decided September 29, 1908.)

CROSS-APPEALS from an order of the Appellate Division of the Supreme Court in the first judicial department, entered October 22, 1907, which modified and affirmed as modified an order of Special Term correcting and confirming a report of commissioners of estimate and assessment.

This proceeding was instituted by the city of New York to acquire title to certain lands for the straightening and widening of Jerome avenue between Woodlawn road and Mosholu avenue. At that point Jerome avenue had been legally opened in 1870. The appellant, the Woodlawn Cemetery, appears to have been the owner of lands lying upon both sides of the avenue. The main portion of its land abutted the avenue on the east, but it also owned a narrow strip of land along the westerly side. This narrow westerly strip, described on the damage map as parcels 2a and 3, is the part of the cemetery's land sought to be acquired by the city in this proceeding.

The improvement projected by this proceeding necessitated the shifting of the course of Jerome avenue on the west of the lines on which it had been laid out in 1870, and this involved the acquisition by the city of the strip belonging to the appellant on that side of the avenue.  It also resulted in the abandonment of a strip of land on the east side of the avenue which had formerly been within its bounds as laid out in 1870, but was wholly outside of it according to the plan of the present improvement.  This abandoned parcel, which has thus ceased to be burdened with the public easement for street use, is included within and forms a part of what    called benefit parcel 8 belonging to the appellant Woodlawn Cemetery as shown on the benefit map contained in the record.

The change thus to be made in Jerome avenue was authorized by a resolution of the board of street opening and improvement, adopted on June 18, 1897, under the authority conferred by the Consolidation Act then in force (L. 1882, ch. 410, § 970), and it charges the entire expense of the improvement upon the property deemed to be benefited thereby.  The petition for the appointment of commissioners of estimate and assessment was not signed until September 15, 1898, on which date commissioners were appointed.  The charter of Greater New York had then gone into effect.  (L. 1897, ch. 378.)  Title to the lands needed for this improvement vested in the city of New York on May 23rd, 1899, when the commissioners filed their oaths of office.  The final report of the commissioners, dated September 21, 1903, awarded to the Woodlawn Cemetery the sum of $23,057.43 as damages for its land taken on the westerly side of the avenue, and assessed its lands on the easterly side, consisting of benefit parcels 8 and 22, for the sums of $15,649.20 and $1,964.55, respectively, making a total assessment for benefit of $17,613.75.

No question is raised as to the amount of the awards for damages, but the Woodlawn Cemetery objects to the assessments for benefit upon the ground that it is exempt therefrom under the provisions of chapter 310 of the Laws of 1879.

Upon the hearing of the motion to confirm the report, the Special Term confirmed it as to the awards for damages, but sustained the objections of the cemetery association as to the assessments and ordered them stricken from the report. As thus amended the report was confirmed.

The city appealed to the Appellate Division, where the order of the Special Term was modified, first, by restoring to the report of the commissioners the amount of the assessments for benefit, and, second, by directing that the assessments, except as to the portion thereof which was chargeable against the parcel of land formerly included within Jerome avenue, should not be assessed against the lands of the Woodlawn Cemetery, and, third, that the cemetery should be paid only the difference between the amount of the assessments for benefit and the amount awarded as damages for the land taken, which difference was found to be $5,443.68. As thus modified, the order of the Special Term was affirmed and the report of the commissioners as thus modified was confirmed. The Woodlawn Cemetery appealed to this court from the whole order of the Appellate Division and the city of New York from so much thereof as failed to reverse that part of the order of the Special Term striking the assessments from the report.

*Joseph A. Flannery* and *Benjamin Trapnell* for Woodlawn Cemetery Association, appellant and respondent. The lands of the appellant are exempt from assessment for benefit by virtue of the provisions of chapter 310, Laws of 1879. The contention of the respondent that the assessment may be imposed, but its enforcement deferred, is in contradiction of the terms of the act of 1879. An assessment levied and confirmed is a direct lien upon the property assessed, and no direction by the court or the commissioners can overcome the plain provision of statute in this respect. (*B. B. Park* v. *Stillwell*, 190 N. Y. 284; *Oakland Cemetery* v. *City of Yonkers*, 63 App. Div. 448; 182 N. Y. 546; *Matter of W. P. P. Church*, 112 App. Div. 130; *Matter of Mayor, etc.*,

118 App. Div. 874; *People ex rel.* v. *Pratt,* 129 N. Y. 68; *Matter of Mayor, etc., of N. Y.,* 23 App. Div. 518.) The commissioners' report constitutes a finding that the lands of the Woodlawn Cemetery are actually used and occupied for cemetery purposes within the meaning of chapter 310, Laws of 1879, and is conclusive in the absence of evidence to the contrary. (*Matter of Whitlock Avenue,* 178 N. Y. 421, 424.) There can be no offset of awards against assessments in a street opening proceeding under the New York city charter unless a valid assessment can first be made by the commissioners which after confirmation in due course by the court becomes a lien under section 1004; until then there is no personal liability of the owner under said section 1004; but as no assessment could be made herein there could be no personal liability. The award and assessment cannot be balanced by the commissioners nor by the court. (L. 1901, ch. 466, §§ 985, 1003; *Matter of Mayor, etc.,* 118 App. Div. 174; *Matter of Whittier St.,* 46 App. Div. 52; *Matter of Whitlock Ave.,* 51 App. Div. 436; *Genet* v. *City of Brooklyn,* 99 N. Y. 296; *R. E. Co.* v. *Harper,* 174 N. Y. 123; *Buckhout* v. *City of New York,* 176 N. Y. 364.) The just compensation which the Constitution guarantees to the Woodlawn Cemetery for its land taken in this proceeding is the full value of the land taken in money alone without any deduction for such benefits as may result to its remaining land from the opening of Jerome avenue. As concededly the power of taxation for special benefits has been suspended by chapter 310, Laws of 1879, there can be no deduction of such benefits here. (*Matter of City of New York,* 190 N. Y. 350.) The imposition of an assessment upon a strip of land abutting on Jerome avenue as realigned in this proceeding and marked on damage map " to be discontinued and closed" was erroneous. (*Matter of Whittier St.,* 46 App. Div. 52; *Matter of Whitlock Ave.,* 51 App. Div. 114; 163 N. Y. 606.) The strip of land in question was closed by virtue of the provisions of chapter 1006 of the Laws of 1895 upon the legal opening of and vesting of title in the city of New York to the lands required

for the new Jerome avenue on May 23, 1899. (Dillon on Mun. Corp. §§ 471, 538, 695; *Met. Ex. Co.* v. *Newton*, 21 N. Y. S. R. 73; *Matter of Mayor, etc., of N. Y.*, 166 N. Y. 495.)

*Francis K. Pendleton, Corporation Counsel* (*Theodore Connoly, John P. Dunn* and *Thomas C. Blake* of counsel), for City of New York, respondent and appellant. Chapter 310, Laws of 1879, does not prevent the ascertainment or the confirmation of the assessment for benefit which the lands of the Woodlawn Cemetery derive from this improvement. (L. 1879, ch. 310; *R. E. Co.* v. *Harper*, 174 N. Y. 129; *Matter of City of Buffalo*, 68 N. Y. 172; *Oakland Cemetery* v. *City of Yonkers*, 63 App. Div. 448; 182 N. Y. 564.) The Street Opening Law of New York city provides that where an owner has lands taken, as well as lands benefited by the proceeding, the city is obliged to pay him only the excess of the damage sustained over and above the benefit derived by him from the improvement. (*Livingston* v. *Mayor, etc.*, 8 Wend. 85; *Genet* v. *City of Brooklyn*, 99 N. Y. 296; *Delaney* v. *Brett*, 51 N. Y. 78; *Vose* v. *Cockroft*, 44 N. Y. 415.) The right given to the city by the provisions of the Street Opening Law, to offset against the damages sustained by the Woodlawn Cemetery the amount of benefit which the Woodlawn Cemetery, as owner of lands benefited by the improvement, received therefrom, and the right given to the city to hold the Woodlawn Cemetery personally liable for the amount of benefit which its lands received from the improvements, are not affected or prohibited by chapter 310, Laws of 1879. (*Genet* v. *City of Brooklyn*, 99 N. Y. 296.) The order of the Special Term improperly struck from the report the assessment against that part of benefit parcel 8 which embraced the lands of Jerome avenue acquired in 1870, but now to be discontinued and closed, and the Appellate Division correctly restored such assessment to the report. (*Matter of Mayor, etc.*, 166 N. Y. 495; *M. E. Co.* v. *Newton*, 21 N. Y. S. R. 93; *J. Co.* v. *Cox*, 42 Misc. Rep. 301.)

WERNER, J.   The statute (L. 1879, ch. 310) under which the Woodlawn Cemetery claims exemption from assessment for benefit in this proceeding reads as follows : " Section 1. No land actually used and occupied for cemetery purposes shall be sold under execution or for any tax or assessment, nor shall such tax or assessment be levied, collected, or imposed, nor shall it be lawful to mortgage such land, or to apply it in payment of debts, so long as it shall continue to be used for such cemetery purposes.   Section 2. Whenever any such lands shall cease to be used for cemetery purposes, any judgment, tax, or assessment which, but for the provisions of this act, would have been levied, collected, or imposed, shall thereupon forthwith, together with interest thereon, become and be a lien and charge upon such land, and collectib.e out of the same." The most cursory glance at this statute reveals the inconsistencies of its two sections.   It is difficult to understand just how a tax or assessment that cannot be levied, collected or imposed upon lands used for cemetery purposes while they are so used can become a charge upon such lands when they cease to be so used.   Be that as it may, the question whether lands actually used for cemetery purposes may be taxed or assessed is not open to discussion in this court.   Such lands are exempt from general taxation as well as from assessments for local improvements.   (*Buffalo Cemetery Assn.* v. *City of Buffalo*, 118 N. Y. 61 ; *People ex rel. Oak Hill Cemetery Assn.* v. *Pratt*, 129 id. 68 ; *Oakland Cemetery* v. *City of Yonkers*, 63 App. Div. 448 ; affd. on op. below, 182 N. Y. 564 ; *Matter of Mayor, etc., of N. Y.*, 118 App. Div. 117 ; *Matter of White Plains Presb. Church*, 112 id. 130.)

The assessment which the Woodlawn Cemetery seeks to avoid in this proceeding is an assessment for a local improvement.   This is true despite the fact that the proceeding was instituted under the power of eminent domain.   The assessment was levied under the city's power of taxation, although that part of the proceeding leading up to the acquisition of the land needed for the improvement, was instituted under the exercise of the right of eminent domain.   These two

30

powers of sovereignty, although exercised in the same pro-
ceeding, are quite separate and distinct. (*Genet* v. *City of
Brooklyn*, 99 N. Y. 296; *Matter of City of New York*, 190
id 350.) The assessment for benefit upon the portions of the
cemetery land deemed to be within the assessment area is,
therefore, an assessment for a local improvement, and unless
there is some distinction between it and the ordinary assess-
ment for a local improvement which, but for the exemption
statute, would be assessable upon lands actually occupied as
a cemetery, we must hold that the lands of the Woodlawn
Cemetery so occupied are exempt. (*People ex rel. Buffalo
Burial Park Assn.* v. *Stilwell*, 190 N. Y. 284.)

The learned Appellate Division, while acquiescing in this
view of the law, expressed the opinion that because these
proceedings involved the condemnation of land belonging to
the cemetery and the consequent award of damages to it, as
well as an assessment upon other lands owned by it which
were deemed to have been benefited, the amount of benefit
should be set off against the award for damages and only the
difference or excess should be paid to the cemetery. This
course, it is suggested, works out an equitable adjustment and
prevents the cemetery from taking its award for damages
amounting to about $23,000, and then repudiating the assess-
ment for benefit made against it for $17,000. And in this
connection it is argued that if the contention of the cemetery
association is upheld, its award will in fact be $40,000 instead
of $23,000. Counsel for the city points to the charter pro-
visions relating to street openings, and claims that they con-
template that benefits should be set off against damage where
the owner affected has land which is actually taken as well as
other land not taken but deemed to be benefited. The section
of the charter (970, L. 1901, chap. 466) which, as to this sub-
ject of street openings, is a substantial re-enactment of the
earlier statutes, provides that, "The lands, tenements and
hereditaments that may be required for such purposes may be
taken therefor, and compensation and recompense made to the
parties and persons, if any such there shall be, to whom the

loss and damage thereby shall be deemed to exceed the benefit and advantage thereof, for the excess of the damage over and above the value of said benefit." This section clearly contemplates the payment only of the excess of damage over benefit in such cases, and we are assured by the learned counsel for the city that this is the settled practice. While this is doubtless the rule in ordinary cases, we think it has no application where lands actually occupied for cemetery purposes are affected. In such cases there can be no proper basis for the set-off, and the statute does not apply. The first section of the act of 1879 (Ch. 310) absolutely prohibits the imposition of any assessment upon lands actually occupied for cemetery purposes. There can be no set-off of an assessment for benefit against an award for damages, unless there is first a valid assessment. This obstacle to the course pursued in this proceeding is not removed by the suggestion that the charter provisions contemplate such a set-off. The charter and the statute must be construed together and effect given to both. Under this familiar rule of construction it must be held that the charter, so far as it related to the set-off of awards for damages against assessments for benefit, has no application to lands actually occupied for cemetery purposes. Whether the set-off here claimed is equitable is a question with which the courts have no concern. The legislature has created the exemption in favor of lands actually occupied for cemetery purposes, and the fact that the municipality acquires such lands under the power of eminent domain does not deprive the cemetery of the benefit of the exemption.

Neither do we think that the situation is changed by section 1004 of the charter which, in addition to the lien upon the land, makes the assessment a personal liability against the owner. A valid assessment is as necessary a condition precedent to personal liability as it is to the creation of a lien upon the land and, as we have observed, no valid assessment can be imposed upon the cemetery's lands. Without an assessment against the cemetery lands, there could be no liability on the part of the cemetery association.

A different question is presented, however, as to that parcel of land which was formerly included within the lines of old Jerome avenue, and which was abandoned as part of that highway. The learned court below has held, and we think correctly, that this tract was subject to assessment. Jerome avenue, as has been stated, was opened in the locality above described in 1870. (L. 1867, ch. 400.) Nothing in that act indicates that the city, in proceedings taken under it, acquired more than an easement for street purposes in the land needed for the highway. The legal title to the fee remained in the adjoining owners. When the public easement in the avenue was legally abandoned (L. 1895, ch. 1006, § 2) the owner of the fee regained complete possession thereof freed from the public easement. But the act under which the old highway was abandoned also provided that the owner of such land could not inclose or occupy the part abandoned until the new avenue was opened. The learned counsel for the cemetery association claims that the new avenue was legally opened when the title to the land taken for that purpose became vested in the city, and that was long prior to the actual physical opening of the new avenue. From this he argues that the abandoned tract became part of the cemetery's land at the same instant when the title to the land needed for the new highway became vested in the city and, therefore, could not be assessed. We are inclined to the view that the word "opened," as used in the statute, means the actual physical opening of the avenue. Any other construction might lead to the destruction of the rights of the public in its highways or streets before the improvements by which they are to be changed could be open for public use. This view necessarily leads to the conclusion that the land formerly comprehended within the lines of the Jerome avenue of 1870, and which reverted to the cemetery freed from the public easement, was not actually occupied and used for cemetery purposes at the time the assessment herein was made.

A further question is presented upon the appeal of the city. The learned Appellate Division has held, in effect, that

while the assessments for benefits could be set off against the award for damages, still the assessments should not appear as such in the report of the commissioners. Counsel for the city contends that these assessments should be retained in the commissioners' report. This contention is based upon the provisions of section 2 of the exemption statute (L. 1879, ch. 310). It cannot escape notice that the first section of that act absolutely prohibits imposition of any assessment upon lands actually used and occupied for cemetery purposes, while the second section provides, that when such lands shall cease to be used for cemetery purposes, any assessment, which but for the provisions of the act, would have been imposed, "shall thereupon forthwith, together with interest thereon, become and be a lien and charge upon such land, and collectible out of the same." The second section of the act seems to point to the legislative intention that the assessments therein enumerated shall become effective when the lands shall no longer be used for cemetery purposes, but it authorizes no valid assessment *in præsenti*, and provides for no method or machinery by which an assessment may properly be made when a change in the use of land deprives it of the statutory exemption. It seems impossible to harmonize these conflicting sections by judicial construction. The legislature alone can so change them as to make both effective. Under the act, as we read it, the commissioners had no right to make any assessments against the lands actually used for cemetery purposes, and until such an assessment can lawfully be imposed there would seem to be no virtue in setting forth in the report of the commissioners the amount which the commissioners would impose by way of assessment if they had the power.

The order appealed from should be modified as above indicated, and the proceeding should be remitted to the Special Term for action in conformity therewith. Costs should be awarded to the appellant, the Woodlawn Cemetery, in both courts.

CULLEN, Ch. J., GRAY, VANN, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Ordered accordingly.